The Honorable Mike Beebe State Senator 211 West Arch Searcy, Arkansas 72143
Dear Senator Beebe:
This letter is a response to your request for an opinion regarding several issues affecting the City of Bald Knob. On behalf of Mr. Thomas R. Bryant, City Attorney for the City of Bald Knob, you have presented various questions, which have been restated as follows:
(1) What funds may be considered "excess" under Act 1130 of 1993?
 (2) Does the use of excess funds from a subsidy account, for which there are no eligible participants, to pay current LOPFI contributions, give the future pensioners a claim on the subsidy account for purposes of petitioning for an increase in benefits?
 (3) Does the state bond for city clerk/treasurers preclude the access of records outside the presence of the clerk by a qualified city official?
 (4) Does the state clerks' handbook preclude the removal of records by a city official outside the presence of the city clerk?
 (5) Is there any state law or interpretations of law that define the city clerk as the sole custodian of city records?
 (6) Would a grant to the city clerk of sole authority to access city records subvert the legislative intent as expressed in Act 914 of 1995?
RESPONSE
Question 1 — What funds may be considered "excess" under Act 1130 of1993?
It is my opinion that any funds not necessary to fulfill the requirements of A.C.A. §§ 24-10-101 through -616 are "excess funds" within the meaning of Act 1130 of 1993.
The pertinent section of that act is section 2, which has been codified at A.C.A. § 24-10-411. That section states:
Transfer of subsidy account funds.
 Any city or town whose local police pension and relief fund or firemen's relief and pension fund has a balance, no participants, and an excess in its local Local Police and Fire Retirement System subsidy account can transfer money left in the subsidy account to the city or town general fund for capital improvements.
A.C.A. § 24-10-411.
Two matters should be noted at the outset of an analysis of your question. First, the language of A.C.A. § 24-10-411 explicitly refers to the transfer of excess funds from a LOPFI subsidy account, rather than to the transfer of excess funds from a local relief and pension fund account. However, I have previously interpreted this section as authorizing the transfer of excess funds from a local relief and pension fund account as well. See Op. Att'y Gen. No. 93-216, a copy of which is attached. Second, the language of Act 1130 of 1993 does not define the term "excess" as used therein, nor does it state any dollar figure above which funds are to be considered "excess." It is therefore necessary to make reference to other sources in order to determine what funds should be considered "excess."
In Op. No. 93-216, I opined that as to a local relief fund in which there are no participants, the entire balance left in that fund can be considered to be excess, and thus transferable to the city's general fund. As to the question of what constitutes an excess in the LOPFI subsidy account, it is helpful to refer to the other sections of the chapter governing the Local Police and Fire Retirement System — Chapter 10 of Title 24 of the Arkansas Code. That chapter sets forth an explicit limitation on the use of funds in the system's accounts. A.C.A. § 24-10-402(c) states:
 All assets of the system shall be held for the sole purpose of paying benefits and making disbursements in accordance with the provisions of this chapter and shall be used for no other purpose whatsoever.
A.C.A. § 24-10-402(c).
Because the use of LOPFI account funds is explicitly limited to the payment of benefits and the making of disbursement that are expressly authorized in Chapter 10, one of which is transfer pursuant to § 411 (Act 1130 of 1993, § 2), it follows that the only uses of the funds other than transfer pursuant to § 411 are the payment of benefits and the making of other disbursements that are authorized by Chapter 10. Therefore, as I read § 411, the only money that can be transferred is that which has not been used to pay benefits or to make other disbursements that are authorized under Chapter 10, such as the payment of administrative expenses pursuant to § 408. Money in the LOPFI subsidy account that is not used for those purposes is, in my opinion, excess, and may be transferred pursuant to § 411.
In sum, then, the funds that are appropriately considered to be "excess" and transferable pursuant to § 411 are: (1) The entire balance of the local pension and relief fund in which there are no participants; and (2) Any funds in the LOPFI subsidy account that are not used to pay benefits or to make disbursements authorized by Title 24, Chapter 10, other than transfer pursuant to § 411.
Question 2 — Does the use of excess funds from a subsidy account, forwhich there are no eligible participants, to pay current LOPFIcontributions, give the future pensioners a claim on the subsidy accountfor purposes of petitioning for an increase in benefits?
It is my opinion that the use of excess funds from a local pension and relief fund account, for which there are no participants, to pay current LOPFI contributions, does not give LOPFI pensioners any claim on the local pension and relief fund account.
I draw this conclusion from two factors. First, the city is obligated to make the contributions that are required by law, regardless of the source from which it obtains the funds to make such contributions. The city's choice of one source of funds over another creates no different rights in the pensioners. Second, the statutes governing the Arkansas Local Police and Fire Retirement System make no provision for the pensioners to petition for an increase in benefits. Under the provisions of A.C.A. §24-10-612, the level of benefits are to be redetermined annually. This statute sets a ceiling above which benefits may not be increased. The pensioners are given no role in the redetermination process. The amount of benefits after redetermination therefore appears to be a matter outside the control of the pensioners. I must therefore conclude that the use of the excess funds in the local relief and pension fund account for payment of LOPFI contributions gives the pensioners no claim to those funds.
With regard to the use of the funds at issue in your questions, it should be noted that Title 19, Chapter 8, which governs public funds, must be complied with in all applicable respects.
Question 3 — Does the state bond for city clerk/treasurers preclude theaccess of records outside the presence of the clerk by a qualified cityofficial?
Unfortunately, we have not been provided with sufficient information upon which to base a response to this question. It is not clear whether the "state bond" to which your question refers is a bond issued pursuant to the Arkansas Self-Insured Fidelity Bond Program (see A.C.A. § 21-2-701 et seq.), or whether it is a locally-approved bond issued under the authority of A.C.A. § 14-58-308. Although the provisions of the cited statutes do not appear to impose a requirement of limited access to municipal records, a review of the bond document in question would be necessary before I could render an opinion as to this matter. As I stated in Op. Att'y Gen. No. 95-170, this question is one of contract law, and thus requires a review of the contracts in question. We have not been provided with a copy of this document, and therefore cannot comment upon its effect.
Question 4 — Does the state clerks' handbook preclude the removal ofrecords by a city official outside the presence of the city clerk?
My office has not been provided with a copy of the clerks' handbook. I am therefore not in a position to interpret its provisions. State law does not address the issue of the removal of records from the clerk's office. This office has previously opined that it is improper for a clerk to maintain records at his or her home, rather than at the clerk's office. Op. Att'y Gen. No. 88-110. If the clerk may not remove the records from the clerk's office, it may be concluded that it is likewise improper for other parties to do so.
Question 5 — Is there any state law or interpretations of law that definethe city clerk as the sole custodian of city records?
It is my opinion that state law does not grant the city clerk the authority to be the sole custodian of city records. I have opined to this effect on at least two other occasions. See Ops. Att'y Gen. Nos. 95-170; 91-135, copies of which are attached.
I also note that as I stated in Op. No. 95-170, some city records are, by their very nature, public records that are subject to review by any citizen of the State of Arkansas pursuant to the Freedom of Information Act (as limited by its exceptions — See A.C.A. § 25-19-101 et seq.). With regard to those records, therefore, state law not only does not grant the clerk sole access to the records, it requires the clerk to disclose the records. There is no requirement, however, under this Act, that the clerk allow persons to remove the records from the clerk's office. Blaylock v.Staley, 293 Ark. 26, 732 S.W.2d 152 (1987).
Question 6 — Would a grant to the city clerk of sole authority to accesscity records subvert the legislative intent as expressed in Act 914 of1995?
It is my opinion that a grant to the city clerk of sole authority to access city records would subvert legislative intent as expressed in Act 914 of 1995. That act, generally, gives the mayor certain powers in connection with the administration of the city. In some instances, it would be necessary for the mayor to have access to city records within the custody of the city clerk in order to exercise the power granted in Act 914 of 1995. Therefore a grant to the clerk of sole authority to access those records would undermine the intent of Act 914 of 1995.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh